# United States Court of Appeals
## For the First Circuit

No. 24-1240

LECY FREDERICO ROSA; M.E.F.; MARISTELA GOMES-DE SOUZA FREDERICO,

Petitioners,

v.

PAMELA J. BONDI,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Montecalvo and Kayatta,[**]
Circuit Judges.

Annelise M. J. de Araujo and Stefanie Fisher-Pinkert, with whom Araujo & Fisher, LLC, was on brief, for petitioners.

Gregory A. Pennington, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Nancy E. Friedman, Senior Litigation Counsel, Office of Immigration Litigation, and Justin Markel,

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Pamela J. Bondi has been substituted for former Attorney General Merrick B. Garland as the respondent.

[**] Judge Selya heard oral argument in this case and participated in the initial semble thereafter. His death on February 22, 2025, ended his involvement in this case. The remaining two panelists issued this opinion pursuant to 28 U.S.C. § 46(d).

Senior Litigation Counsel, Office of Immigration Litigation, were
on brief, for respondent.

———————————

July 11, 2025

———————————

**PER CURIAM**.  This is a petition for judicial review of a final order of the Board of Immigration Appeals (BIA), which affirmed a denial of a motion to terminate removal proceedings. Concluding, as we do, that the agency applied an incorrect standard of proof, we remand to the agency for further proceedings consistent with this opinion.

I

We briefly rehearse the relevant facts and travel of the case.  The lead petitioner, Lecy Frederico Rosa, his wife and co-petitioner, Maristela Gomes-De Souza Frederico, and their minor child, M.E.F., entered the United States without inspection on or about January 27, 2022, near El Paso, Texas.[1]  They soon encountered Customs and Border Patrol (CBP) agents and were formally placed in removal proceedings by notices to appear (NTAs) dated February 3, 2022.  The NTAs alleged that the petitioners were citizens of Brazil and charged that they were removable as aliens present in the United States without having been admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(i); see also 8 U.S.C. § 1101 (defining an "alien" under U.S. law as "any person not a citizen or national of the United States").  The petitioners denied these charges.

---

[1] For ease of reading, we sometimes refer to Rosa as if he were the sole petitioner.  Our decision, of course, is binding upon his co-petitioners as well.

At a hearing on February 1, 2023, an immigration judge (IJ) ordered the Department of Homeland Security (DHS) to submit evidence of the petitioners' alienage, that is, evidence that the petitioners were aliens under U.S. law.  In response, DHS proffered an "EARM Summary" for each petitioner.[2]

Each such summary contained information about a particular petitioner, including his or her name, date of birth, A-number, physical description, location and date of the encounter with CBP, familial relationships, and occupation.  Notably, the EARM Summary for each petitioner stated that his or her country of citizenship was Brazil.  Every EARM Summary also included an I-213 section that contained information in narrative form about the petitioner's encounter with CBP.

On March 14, 2023, the petitioners moved to terminate their removal proceedings.  They asserted that DHS had failed to carry its burden of establishing alienage because the EARM Summaries did not constitute sufficient or reliable evidence. Specifically, the petitioners asserted that the EARM Summaries

---

[2] EARM is an acronym (standing for the ENFORCE Alien Removal Module) describing a software that is a part of DHS's Enforcement Integrated Database.  That database, in turn, is a repository of information for use in law enforcement and homeland security applications.  See U.S. Dep't of Homeland Sec., Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) (2018), https://perma.cc/6UD3-Z8PN.

lacked certain pertinent information and contained material inaccuracies.

For example, the EARM Summaries did not contain names of the CBP and DHS agents involved in the encounters (including encounter event supervisors).  So, too, those Summaries omitted any information about the two adult petitioners' parentage, their parents' nationalities, and the towns where they were alleged to have lived prior to entering the United States.  Additionally, the EARM Summaries included generic language in the I-213 narrative section without identifying whether the statements applied to the petitioners.[3]  The petitioners also alleged that the lead petitioner's EARM Summary incorrectly referred to him using feminine pronouns.

There was more.  The petitioners noted that the EARM Summaries stated that they were fluent in Portuguese.  Each EARM Summary made clear, however, that the administrative warnings were provided in Spanish.  The documents nowhere indicated that a Portuguese interpreter participated in their preparation.  Finally, the narratives within the EARM Summaries were dated a week after the date of the alleged encounter with CBP.  All that

---

[3] Those statements included representations that "If child is 14 and over, the child signed the forms in the presence of the parent" and "Juveniles the age of 13 and below were enrolled into e3 only due to their age."  They did not specify whether any such juvenile was involved in a particular encounter.

being said, the forms state that petitioners are citizens of Brazil, and petitioners offer no direct rebuttal to those statements. Rather, they contend that the errors to which they point render all statements in the form so unreliable as to be incapable of proving alienage.

The IJ denied the petitioners' motion to terminate their removal proceedings. See 8 C.F.R. § 1240.12 (allowing immigration judges to terminate proceedings). Relying on the EARM Summaries, the IJ determined that DHS had carried its burden of establishing alienage by "clear and convincing" evidence. An order for the removal of all three petitioners followed.

The petitioners appealed to the BIA. They maintained that the appropriate degree of proof required to establish alienage was "clear, unequivocal, and convincing evidence." The IJ had not applied this standard but, rather, had required DHS to show alienage only by "clear and convincing evidence." In the petitioners' view, the EARM Summaries did not clear this bar.

The BIA rejected the petitioners' arguments. It concluded that there was no difference between the two standards and that those standards -- "clear and convincing evidence" and "clear, unequivocal, and convincing evidence" -- had identical meanings. It further concluded that the EARM Summaries were sufficiently reliable to satisfy this evidentiary standard. Based on these findings, the BIA denied the petitioners' appeal.

This timely petition for judicial review ensued.

## II

"Where, as here, the BIA's decision rests primarily on the IJ's decision, we review the two decisions as a unit." Garcia Oliva v. Garland, 120 F.4th 1, 5 (1st Cir. 2024). Because that is the posture in which this case arises, we sometimes refer to the IJ and the BIA jointly as "the agency."

We review conclusions of law, including determining the applicable burden of proof, de novo. See Vargas-Salazar v. Garland, 119 F.4th 167, 172 (1st Cir. 2024); see also Est. of Abraham v. Comm'r of Internal Revenue, 408 F.3d 26, 35 (1st Cir. 2005) (describing the burden of proof as a question of law), amended per curiam, 429 F.3d 294 (1st Cir. 2005). Conversely, "[w]e review 'factual findings . . . under the familiar substantial evidence standard.'" Loja-Paguay v. Barr, 939 F.3d 11, 15 (1st Cir. 2019) (cleaned up) (quoting Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009)). This standard directs that, as long as the agency's factual determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," we must accept it. Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

In removal proceedings, DHS "need only establish the respondent's identity and alienage to meet its burden on

deportation." Navarro-Chalan v. Ashcroft, 359 F.3d 19, 22 (1st Cir. 2004); see 8 C.F.R. § 1240.8(c). "The burden then shifts to the respondent . . . to defeat deportation." Id.; see 8 C.F.R. § 1240.8(c).

### III

It is undisputed that DHS had the burden of proof to show that the petitioners were aliens as defined by the Immigration and Nationality Act (INA). See Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 101(a)(3), 66 Stat. 163, 166 (codified as amended at 8 U.S.C. § 1101(a)(3)). However, the petitioners first argue that both the IJ and the BIA failed to require the DHS to meet the proper standard of proof in fulfilling its burden.

The petitioners construct this argument on the premise that -- under Woodby v. INS, 385 U.S. 276 (1966) -- the appropriate degree of proof required for establishing alienage is "by clear, unequivocal, and convincing evidence." Id. at 286. This standard, they suggest, is not only distinct and apart from the "clear and convincing" standard that the agency applied but also more demanding. For the reasons that follow, we agree with the petitioners that the "clear, unequivocal, and convincing" standard is distinct from the "clear and convincing" standard. We also agree that the agency should have applied the former standard.

**A**

Some background supplies a useful starting point for our analysis.  The INA was first enacted in 1952.  <u>See</u> Immigration and Nationality Act of 1952, Pub. L. 82-414, 66 Stat. 163.  The original version of the INA established the framework for removal proceedings.  <u>Id.</u>  But at that time, the statute lacked standards of review and burdens of proof for certain proceedings, including "the degree of proof required at the administrative level in deportation proceedings."  <u>Woodby</u>, 385 U.S. at 282.

In <u>Woodby</u>, the Supreme Court closed this gap, holding that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true."  <u>Id.</u> at 286.  Subsequently, the INA was amended.  However, as the parties now seem to agree, these amendments did not change the standard for proving alienage in this proceeding.

**B**

In its petition for rehearing, the government agreed that <u>Woodby</u> provides the standard for determination of alienage, whether an individual is charged with inadmissibility or deportability.[4]  We agree that <u>Woodby</u> provides the degree of proof

_____

[4] We initially issued our opinion in this case on March 13, 2025.  Subsequently, the government filed a petition for panel rehearing.  That petition changed course from the government's original argument; although the government previously argued for

- 9 -

required to establish alienage for individuals charged with inadmissibility and need not reach the issue as to individuals charged with deportability. Consequently, we conclude that DHS had to present "clear, unequivocal, and convincing evidence" of alienage here.

C

The next question, then, is whether the term "unequivocal" imparts a heightened meaning to the degree of proof required. In other words, does "clear, unequivocal, and convincing evidence" mean something different (and presumably, more onerous) than "clear and convincing evidence"? We agree with the petitioners that it does.

When addressing this question, we do not write on a pristine page. In Addington v. Texas, 441 U.S. 418 (1979), the Supreme Court differentiated between evidence that is "clear and convincing" and evidence that is "clear, unequivocal, and convincing." See id. at 431-33. The Court asserted that "[t]he term 'unequivocal,' taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." Id. at 432. In furtherance of this point, the

---

this court to find that the "clear and convincing evidence" standard applied, it now argues that this circuit's case law binds us to the "clear, unequivocal, and convincing evidence" standard. In light of the government's about-face, we now withdraw our previous opinion and reissue this opinion to provide some clarity.

Court explained that it "has used the 'clear, unequivocal[,] and convincing' standard of proof to protect particularly important individual interests in various civil cases" and specifically cited to cases involving deportation and removal as examples of implicating these particularly important interests. Id. at 424.

The statute sometimes uses "clear and convincing evidence," 8 U.S.C. § 1229a(c)(3) (burden of proof in removal proceedings for deportable aliens), and in other sections "clear, unequivocal[,] and convincing evidence," 8 U.S.C. § 1229a(b)(5)(A) (burden of proof that written notice of removal hearing was provided for in absentia order). "A well-established canon of construction requires that courts give all language in a statute operative effect." Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia, 524 F.3d 54, 59 (1st Cir. 2008). Thus, as used in the statute, the word "unequivocal" likely adds something to the government's burden.

It is true that because of Congress's silence on the particular issue before us, we are ultimately interpreting not the statute but, rather, a judicial standard mandated by Woodby. This might ordinarily free us from the precepts of statutory construction. See Mondaca-Vega v. Lynch, 808 F.3d 413, 420 (9th Cir. 2015). But we must assume that Congress was aware of and considered the "clear, unequivocal, and convincing" burden in removal proceedings articulated in Woodby when it amended the INA.

See <u>Sepulveda</u> v. <u>United States</u>, 330 F.3d 55, 64 (1st Cir. 2003) ("[I]n the ordinary case, 'Congress expects its statutes to be read in conformity with [the Supreme] Court's precedents.'" (quoting <u>Clay</u> v. <u>United States</u>, 537 U.S. 522, 527 (2003))). We are, therefore, duty-bound to conclude that "clear and convincing evidence" conveys a different meaning than "clear, unequivocal, and convincing evidence." Simply put, the former requires a lessened degree of proof.

The Sixth Circuit has come to a similar conclusion in the context of inadmissible aliens. In <u>Ward</u> v. <u>Holder</u>, 733 F.3d 601 (6th Cir. 2013), that court held that "[t]he 'clear, unequivocal, and convincing standard' is a more demanding degree of proof than the 'clear and convincing' standard." <u>See</u> <u>id.</u> at 605 (interpreting <u>Addington</u>, 441 U.S. at 432-33). We think that the <u>Ward</u> court's reading of <u>Addington</u> is persuasive.

We recognize that the Ninth Circuit has come to a different conclusion in <u>Mondaca-Vega</u>, 808 F.3d 413, as relied upon by the agency in its decisions and the government in this appeal. In our view, <u>Mondaca-Vega</u> rests on a misreading of <u>Addington</u>: notwithstanding <u>Addington</u>'s explicit recognition of the import of the word "unequivocal," the <u>Mondaca-Vega</u> court cited <u>Addington</u> for the proposition that "[t]he Supreme Court has repeatedly emphasized that there are three burdens of proof." <u>Mondaca-Vega</u>, 808 F.3d at 422. It described these three burdens as limited to

a preponderance of the evidence, clear and convincing evidence, and beyond a reasonable doubt. See id. It proceeded to hold that "[t]hree is enough" and to reject a separate "clear, unequivocal, and convincing" standard. Id. Like the dissent in that case, we do not read the Supreme Court's precedent to "suggest[] that standards of proof are limited to these three general levels." Id. at 429 (Smith, J., dissenting in part). Instead, we take Addington at face value and hold that the "clear, unequivocal, and convincing" standard has its own meaning.

<b>IV</b>

The parties quarrel over whether the EARM Summaries, without more, are sufficient and reliable proof of alienage under the "clear, unequivocal, and convincing" standard. Because the agency applied the wrong burden of proof and therefore did not make a factual finding one way or the other, the agency is not entitled to review under the deferential substantial evidence standard on that issue. And indeed, as the parties acknowledged at oral argument, the use of the EARM Summaries to show alienage in immigration hearings is relatively new. We therefore take no stance on whether DHS satisfied the "clear, unequivocal, and convincing" standard by presenting the immigration court with EARM Summaries. We leave that issue for resolution in future proceedings.

**V**

We need go no further.  For the reasons stated above, we
<u>grant</u> the petition for judicial review, <u>vacate</u> the order complained
of, and <u>remand</u> to the BIA for further proceedings consistent with
this opinion.


**<u>So Ordered</u>**.